BANSI D. SHARMA, Plaintiff-Appellant, v. NIKKI ZOLLAR, as Director of the Department of Professional Regulation, Defendant-Appellee.

First District (5th Division)    No. 1—91—3834

Opinion filed August 5, 1994.

Cyriac D. Kappil, of Chicago, for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

This administrative review action was brought by the plaintiff, Bansi D. Sharma, M.D., against Nikki Zollar,[1] Director of the Illinois Department of Professional Regulation (the Department) to contest the denial of his request for subpoenas pursuant to section 1110.140 of the Illinois Administrative Code (68 Ill. Adm. Code § 1110.140 (Supp. 1988)). Doctor Sharma sought a declaratory judgment that section 1110.140 of the Administrative Code was unconstitutionally void on its face and as applied, and he sought a writ of *mandamus* directing the Director of the Department to issue the requested subpoenas. The circuit court granted the defendant's motion for summary judgment finding no due process violation and denying declaratory judgment relief based on the absence of an actual controversy. The plaintiff appealed.

The issues presented for review are: whether the trial court properly granted summary judgment in favor of the defendant because the plaintiff's declaratory judgment action was rendered moot by the dismissal of the underlying charges against him; and, if not, whether summary judgment was proper based upon a finding that section 1110.140 of the Illinois Administrative Code (68 Ill. Adm. Code § 1110.140 (Supp. 1988)) was not violative of due process.

BACKGROUND

On June 1, 1990, the plaintiff, an Illinois licensed physician, was charged by the chief of prosecution for the Department with violating the Medical Practice Act of 1987 (Ill. Rev. Stat. 1987, ch. 111, par. 4400—1 *et seq.*). The charges against the plaintiff, germane to this appeal, alleged that on approximately August 29, 1988, he was present in the KHN Pharmacy located in Chicago Heights, Illinois, and that he was supervising the work of a pharmacist technician by

---

[1]The caption in the complaint filed on November 7, 1990, listed Kevin K. Wright as Director of the Department of Professional Regulation. Nikki Zollar succeeded Wright as Director and was substituted as defendant by order of court on February 8, 1991.

attempting to verify the accuracy of the prescriptions being filled. The charges further stated that this act constituted the unlawful practice of pharmacy without a license in violation of section 22(5) of the Medical Practice Act of 1987 (Ill. Rev. Stat. 1987, ch. 111, par. 4400—22(5)). The Department sought the revocation of the plaintiff's medical license.

On September 13, 1990, an administrative hearing was commenced by the Illinois State Medical Disciplinary Board (the Board) before a hearing officer appointed by the Director of the Department. (68 Ill. Adm. Code §§ 1110.170, 1110.180 (Supp. 1988); Ill. Rev. Stat. 1987, ch. 111, pars. 4400—7, 4400—37.) Prior to this date, the Department had identified James Thorns as its occurrence witness and supplied the plaintiff with copies of several reports prepared by Thorns. Thorns was employed by the Department as a pharmacy investigator.

During the period of September 25, 1990, through October 9, 1990, the Director of the Department issued administrative subpoenas to several individuals compelling them to appear at the hearing scheduled for October 15, 1990. A subpoena also was issued to the keeper of records for plaintiff's medical practice seeking the production of financial records relating to the building where the KHN pharmacy was located.

On October 19, 1990, the plaintiff made a written request to the chief of prosecution of the Department[2] for the issuance of subpoenas to James Thorns; John Faber, the chief pharmacist for Little Company of Mary Hospital; and Edward Duffey, drug compliance coordinator for the Department.[3] The subpoenas requested payroll and attendance records for James Thorns from the Department and from Little Company of Mary Hospital for the period of August 1, 1988, through October 19, 1990; Thorns' tax records for 1988 and 1989; ethics statements filed with the State regarding secondary employment by Thorns; and documents authorizing and disclosing Thorns' employment outside the Department. Attached to plaintiff's request for subpoenas was an affidavit signed by Richard D. Romano. The affidavit stated that, on October 19, 1990, Romano had a telephone conversation with an employee of the pharmacy depart-

---

[2]Plaintiff's initial request for issuance of subpoenas was made to the hearing officer at the Medical Disciplinary Board hearing. The Department's counsel objected arguing that the hearing officer did not have jurisdiction to hear the request.

[3]At the hearing on plaintiff's motion for issuance of subpoenas, plaintiff orally requested that a fourth subpoena be issued to Suburban Hospital of Hinsdale, Illinois. This request was denied by the hearing officer as well.

ment of Little Company of Mary Hospital and that the employee stated that James Thorns was employed by that hospital pharmacy and had been so employed for some time.

On October 29, 1990, a hearing was held pursuant to Doctor Sharma's emergency motion to issue the subpoenas. The hearing officer appointed by the Director of the Department was the same individual assigned to hear the proceedings before the Medical Disciplinary Board. At the hearing, the plaintiff indicated that the information requested in the subpoenas was needed to show that Thorns was physically present at Little Company of Mary Hospital in Evergreen Park, Illinois, at the same time that he claimed to be at the KHN Pharmacy in Chicago Heights, Illinois. He informed the hearing officer that the ethical disclosure statements were needed to show that Thorns had not disclosed to the Department his secondary employment, as required, and thus was not a believable witness.[4]

The Department conceded that Thorns worked as a pharmacist for the hospitals identified by the plaintiff in addition to working as a Department investigator but explained that the outside employment was necessitated by a Department policy that pharmacy investigators maintain their pharmacy licenses in good standing. The Department argued, however, that the requested information was unnecessary because Thorns' presence at the KHN Pharmacy on August 29, 1988, was established inferentially by the plaintiff's own testimony at the Board hearing.

The hearing officer denied plaintiff's subpoena requests, finding that he had failed to make a good-faith showing that Thorns was not at the KHN Pharmacy on August 29, 1988. He also held that the plaintiff waived his right to call any witnesses or present any documents on the first day of the Board hearing.

On November 7, 1990, the plaintiff filed the instant action in the circuit court seeking a declaratory judgment, writ of *mandamus* and other relief. On January 4, 1991, the Department filed a motion for summary judgment seeking dismissal of all counts in plaintiff's complaint. Simultaneously, the Department completed its case in chief at the Board hearing; and, on January 11, 1991, after the Department rested, the plaintiff filed a motion to dismiss the charges. At the conclusion of this argument, the hearing officer ruled that the

---

[4]Although not held at the administrative proceedings or at the trial court level, the ethical disclosure statements would have been inadmissible for impeachment purposes. Evidence of specific prior bad acts unrelated to a material issue is prohibited. *Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 656, 299 N.E.2d 108.

Department had failed to sustain its burden of proof and had not presented sufficient evidence to show that the plaintiff was acting in a supervisory capacity at the pharmacy. The hearing officer further found that the alleged activity, even if proved, would not be a violation of the Medical Practice Act.

On April 17, 1991, the Medical Disciplinary Board adopted the hearing officer's findings and recommended that the charges against the plaintiff be dismissed. The Director of the Department adopted the Board's recommendations on June 7, 1991, and ordered that the plaintiff's license to practice medicine remain in good standing.

Thereafter, in the circuit court action, the Department filed a supplemental memorandum in support of its motion for summary judgment arguing that the Department's order in the disciplinary proceeding mooted the pending proceedings. After hearing argument, the circuit court granted the Department's motion. The court upheld the constitutionality of section 1110.140 of the Illinois Administrative Code (68 Ill. Adm. Code § 1110.140 (Supp. 1988)), stating that the purpose of the subpoena regulation was to ensure issuance of subpoenas only when relevant and necessary and to prevent issuance of subpoenas that would harass the public. The court also found that the administrative regulation was not arbitrary and capricious and that it was administered fairly. In addition, the court held that there was no actual controversy to support a declaratory judgment action.

OPINION

Initially, we must determine whether the trial court properly granted summary judgment and dismissed plaintiff's complaint for declaratory judgment on the basis of mootness. It is well settled that the sole function of the court reviewing the trial court's entry of summary judgment is to determine whether the lower court correctly ruled that no genuine issue of material fact had been raised, and, if none was raised, whether judgment was correctly entered as a matter of law. (*E.g., Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 453 N.E.2d 1133; *Murphy v. Rochford* (1977), 55 Ill. App. 3d 695, 371 N.E.2d 260.) Furthermore, the issue on appeal concerning the dismissal of plaintiff's declaratory judgment action is not whether the trial court should have declared the rights of the parties, but, rather, whether the court's failure to do so was an abuse of discretion. *Rasky v. Anderson* (1978), 62 Ill. App. 3d 633, 636, 379 N.E.2d 1 (supplemental opinion).

In the instant appeal, the plaintiff argues that the trial court erroneously granted summary judgment and incorrectly held that an actual controversy did not exist. The plaintiff contends that while the

status of his medical license was no longer in doubt, due to the dismissal of the charges against him, a controversy continued to exist concerning his due process rights to the issuance of the requested subpoenas. He also contends, in the alternative, that his case meets the public interest exception to the mootness doctrine and that he does not have to be presently harmed to challenge the validity of the statute.[5]

●1 Generally, a plaintiff has standing to maintain a declaratory judgment action if he meets two requirements. First, there must be an actual controversy, a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy. Second, the party seeking the declaration must be interested in the controversy and must possess a personal claim, status or right which is capable of being affected. (*Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 389 N.E.2d 529; *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298.) To have standing, one must have sustained, or be in immediate danger of sustaining, a direct injury. *Block*, 75 Ill. 2d 443, 389 N.E.2d 529.

●2 The actual controversy requirement of standing cannot be satisfied where the underlying issues of the case are moot or premature. (*Clyde Savings & Loan Association v. May Department Stores* (1981), 100 Ill. App. 3d 189, 426 N.E.2d 955.) An issue is considered moot where events occur which make it impossible for the court to grant effectual relief. (*Wheatley v. Board of Education of Township High School District 205* (1984), 99 Ill. 2d 481, 459 N.E.2d 1364; *People ex rel. Hartigan v. Illinois Commerce Comm'n* (1985), 131 Ill. App. 3d 376, 475 N.E.2d 635.) When it becomes apparent that an opinion cannot affect the results as to the parties or the controversy before it, the court should not resolve the question merely for the sake of setting a precedent or to govern potential future cases. *West Side Organization Health Services Corp. v. Thompson* (1980), 79 Ill. 2d 503, 404 N.E.2d 208; *Edwardsville School Service Personnel Association v. Illinois Educational Labor Relations Board* (1992), 235 Ill. App. 3d 954, 600 N.E.2d 910; *Tippin v. Rockdale Sash & Trim Co.* (1990), 196 Ill. App. 3d 333, 553 N.E.2d 729.

In *Hamer v. Board of Education of Township High School District No. 113* (1986), 140 Ill. App. 3d 308, 488 N.E.2d 1096, the court found the plaintiff lacked standing to maintain a declaratory judgment

---

[5]Plaintiff concedes in his brief on appeal that counts III, IV and V of his complaint seeking a writ of *mandamus* and other relief are moot.

action because her claim was moot. The plaintiff sought to challenge a policy of grade reduction based upon unexcused absences. The court found the plaintiff had no interest in the outcome of the litigation and that a judgment on the merits in her favor would have no practical effect upon her since, at the time of the court's ruling, the plaintiff was about to graduate with a high grade point average from the college of her choice. The court stated that a judgment on the merits would merely serve as a guide for future cases which the court was without authority to give. See also *West Side Organization Health Services Corp. v. Thompson* (1980), 79 Ill. 2d 503, 404 N.E.2d 208 (mootness at appellate level due to unavailability of funds to grant effectual relief).

●3 We believe the principles espoused in *Hamer* are applicable to the instant appeal. As in *Hamer*, the trial court in the case at bar could give no effectual relief to the plaintiff. Upon the conclusion of the administrative hearing, the Department Director adopted the Medical Disciplinary Board's findings and recommendations that the Department had failed to prove plaintiff's violation of the Medical Practice Act of 1987 (Ill. Rev. Stat. 1987, ch. 111, par. 4400—1 *et seq.*) and that the plaintiff's medical license should remain in good standing. Plaintiff's need for the requested subpoenas was eliminated and his right to them became theoretical and, thus, moot. We cannot say that the court's grant of summary judgment based on mootness was an abuse of discretion.

The plaintiff further argues that, even if the mootness doctrine applies, he is entitled to declaratory judgment because he meets the requirements of the public interest exception. This exception, recognized in Illinois in *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 104 N.E.2d 769, applies when three criteria are met. They are: whether the question is public in nature; whether it is desirable to make an authoritative determination of a question for the guidance of public officials; and whether the question is likely to recur. (*Labrenz*, 411 Ill. at 622, 104 N.E.2d at 772.) Illinois courts apply the public interest exception very narrowly and require that each criterion be met. (*E.g., Edwardsville School Service Personnel Association*, 235 Ill. App. 3d 954, 600 N.E.2d 910; *In re Johnson* (1977), 53 Ill. App. 3d 921, 369 N.E.2d 70.) The public interest exception is invoked only in cases involving an extraordinary degree of public concern and only where the public interest is very clear. *People ex rel. Cairo Turf Club, Inc. v. Taylor* (1954), 2 Ill. 2d 160, 116 N.E.2d 880; *Hamer*, 140 Ill. App. 3d 308, 488 N.E.2d 1096.

We must reject plaintiff's public interest argument on two bases. First, the plaintiff conceded at oral argument before this court that

he did not raise the public interest exception at the trial court level. Second, even if properly raised, the plaintiff's argument lacks merit. As the court below stated, the issues presented by plaintiff's declaratory judgment action were not likely to recur on a repeated basis. The issue of the plaintiff's right to the issuance of subpoenas could not recur since the charges against him had been dismissed. It is true, as the plaintiff contends, that the question of an applicant/licensee's right to the issuance of subpoenas may exist as to future litigants. However, that issue can be reviewed at a later date, in the context of an actual controversy, when charges are pending and when effectual relief can be granted. *Cf. Roe v. Wade* (1973), 410 U.S. 113, 125, 35 L. Ed. 2d 147, 161, 93 S. Ct. 705, 713 (because of limited period of gestation of human fetus, controversy involving right to abortion capable of repetition to plaintiff and general population yet evading review).

We also believe that the public interest exception is not appropriate in the instant case because the issues presented are not of the magnitude where there is an "extraordinary degree of public concern and interest" (*La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 380, 121 N.E.2d 486) that would require an authoritative determination. Absent here is the need to address life and death issues raised in the context of governmental action impeding on religious beliefs (*Labrenz*, 411 Ill. 618, 104 N.E.2d 769; see also *In re Estate of Brooks* (1965), 32 Ill. 2d 361, 205 N.E.2d 435 (forced medical treatment of an incompetent adult where such treatment is forbidden by religious conviction)); or public health concerns (*Environmental Protection Agency v. Pollution Control Board* (1980), 88 Ill. App. 3d 71, 410 N.E.2d 98, *rev'd on other grounds* (1981), 86 Ill. 2d 390, 427 N.E.2d 162); or the need to develop case law to guide public officials (*e.g., In re Marquardt* (1981), 100 Ill. App. 3d 741, 427 N.E.2d 411 (involuntary commitments); *People v. Bailey* (1983), 116 Ill. App. 3d 259, 452 N.E.2d 28 (use of Department of Corrections facilities to house certain juveniles on probation)).

Given the absence of the public interest exception, the trial court did not abuse its discretion when it held that the plaintiff did not present an actual controversy and when it granted summary judgment to the Defendant. Furthermore, our conclusion in this regard makes it unnecessary to reach plaintiff's argument relative to the second requirement of standing, namely, that he was an interested party and had standing to bring the declaratory action even if he was not presently harmed or aggrieved.

●4 In addition to affirming the trial court's grant of summary judgment on mootness grounds, the court's rulings with respect to

the merits of plaintiff's constitutional arguments regarding due process also warrant affirmance. See *People v. Capitol News, Inc.* (1990), 137 Ill. 2d 162, 560 N.E.2d 303; *Tippin v. Rockdale Sash & Trim Co.* (1990), 196 Ill. App. 3d 333, 553 N.E.2d 729 (constitutional issues addressed even though finding of mootness could by itself have been dispositive).

Initially, it should be noted that administrative proceedings are not criminal prosecutions and are not subject to the same safeguards and protections afforded in the latter. (See *Naguit v. Selcke* (1989), 184 Ill. App. 3d 80, 539 N.E.2d 1353; *Distaola v. Department of Registration & Education* (1979), 72 Ill. App. 3d 977, 391 N.E.2d 489.) Administrative proceedings are subject, however, to the requirements of due process of law. (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 416 N.E.2d 1082.) Due process requires a fair proceeding which includes proper notice, an opportunity to be heard, and an impartial tribunal. (See, *e.g., Ciechon v. City of Chicago* (7th Cir. 1982), 686 F.2d 511; *Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 606 N.E.2d 1111.) Furthermore, due process extends to administrative hearing litigants the rights of compulsory process and confrontation of witnesses. *Goldberg v. Kelly* (1970), 397 U.S. 254, 268-71, 25 L. Ed. 2d 287, 299-301, 90 S. Ct. 1011, 1021-22.

The plaintiff in the case at bar argues that section 1110.140 of the Illinois Administrative Code (68 Ill. Adm. Code § 1110.140 (Supp. 1988)) violates due process because the procedures specified therein governing the issuance of subpoenas are not neutrally applied. He contends that prosecutors for the Department are issued subpoenas as a matter of right whereas registrants or licensees must make a *prima facie* showing in writing as to their entitlement to subpoenas. He also contends that the right to a fair and impartial tribunal is violated because the Director of the Department rules on the initial request for a subpoena as well as at the first review stage and because the Department's prosecutor performs a dual role of prosecuting the disciplinary charges and ruling on the applicant/licensee's subpoena requests.

As provided in section 1110.140 of the Illinois Administrative Code:

> "(a) The Director or his delegate, will issue subpoenas for the attendance of witnesses or production of books, records, documents or other evidence.
>
> (b) Any registrant or petitioner seeking issuance of a subpoena will apply in writing to the Department, Attention: Chief of Prosecutions, setting forth facts which purport to demonstrate

that the subpoena is required. Upon refusal by the Director to issue any subpoena, the registrant will be entitled to a hearing before the Director, to be conducted as a matter or record." (68 Ill. Adm. Code § 1110.140 (Supp. 1988).)

The court below held that this provision was not violative of due process provided it was administered reasonably. It found that the rule would ensure that subpoenas were issued only when relevant and necessary and not for the purpose of harassing the public. The court further upheld the provision because the plaintiff did not prove that it was arbitrary and capricious.

In his first due process argument, the plaintiff contends that the use of subpoenas is not equally available to both the prosecution and the applicant/licensee. The plaintiff relies on *People ex rel. Fisher v. Carey* (1979), 77 Ill. 2d 259, 396 N.E.2d 17, for the proposition that a prosecutor cannot unilaterally deprive a defendant of subpoenaed materials. The plaintiff's reliance is misplaced. *Carey* involved a defendant's sixth amendment right to the use of subpoenas during criminal proceedings (U.S. Const., amend. VI). The *Carey* court extended this right to the time period preceding the preliminary hearing. The court also held that the State's Attorney could not intercept the subpoenaed materials prior to their dissemination to the public defender by the police department but that the State's Attorney could see what materials were provided to the court pursuant to the subpoena request. In *Carey* there was no allegation or proof that the State's Attorney determined what information would be delivered pursuant to the defendant's subpoena or prohibited the tendering of the requested documents. The defendant's subpoena request was made to the court and ruled upon by that entity alone.

In the instant case, section 1110.140 of the Administrative Code does not give the Department prosecutor any power to unilaterally determine what information the applicant/licensee would be entitled to receive pursuant to the latter's request for issuance of subpoenas. In fact, section 1110.140 provides that the Director or his delegate "will" issue subpoenas upon an applicant's showing "that the subpoena is required." (68 Ill. Adm. Code § 1110.140 (Supp. 1988).) Nowhere in the provision is the Department prosecutor given authority to make the determination "that the subpoena is required"; and, in fact, the Department prosecutor did not make that determination with respect to plaintiff's subpoena requests.

It is true, however, that section 1110.140 appears to treat the Department's request for subpoena differently from the applicant/licensee's request. On its face, this regulation does not require a showing of reasonableness and relevancy by the Department

prosecutor at the time he requests a subpoena. When the applicant/ licensee makes his initial request to the Director for subpoena, he must "demonstrate that the subpoena is required." We do not believe, however, that this distinction creates a due process violation because, in point of fact, the parties are ultimately subject to the same requirements of relevancy and reasonableness. At the enforcement stage, when the Department prosecutor seeks to compel compliance with the Department's subpoena or when the prosecutor must defend the subpoena request during a hearing on a motion to quash, the Department prosecutor must show that the subpoena was relevant and reasonable. See *Equal Employment Opportunity Comm'n v. Suburban Transit System, Inc.* (N.D. Ill. 1982), 538 F. Supp. 530; *Fair Employment Practices Comm'n v. Hohe* (1977), 53 Ill. App. 3d 724, 368 N.E.2d 709 (agency subpoenas issued during investigative stage are subject to due process requirements of relevance and reasonableness).

The plaintiff's final due process argument concerns an alleged absence of a fair tribunal at the hearing on his request for issuance of subpoenas. He contends that the Department's prosecutor performs a dual role of prosecuting the disciplinary charges and ruling on the applicant/licensee's subpoena requests.

Due process is not denied because of the fact that an agency as a whole combines adjudicatory, investigative and prosecutorial functions. (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 416 N.E.2d 1082.) Furthermore, some mixture of judicial and prosecutorial function is acceptable in administrative proceedings, provided the person performing the quasi-prosecutorial function is not also a member of the tribunal. (*Ladenheim v. Union County Hospital District* (1979), 76 Ill. App. 3d 90, 394 N.E.2d 770.) In *Ladenheim*, the appellant argued that he was denied due process because the hospital attorney acted as both judge and prosecutor when he examined witnesses, made occasional objections to evidence presented by plaintiff, and advised the chair of the executive committee on procedural and evidentiary rulings. The court held that some combination of judicial and prosecutorial function was acceptable and that the conduct of the hospital's attorney in that case was fair and neutral.

The cases cited by plaintiff in support of his argument are of no avail. In *Abrahamson v. Department of Professional Regulation* (1991), 210 Ill. App. 3d 354, 568 N.E.2d 1319, the appellate court held that the proceedings before the hearing board were accusatorial, inquisitorial, personally insulting to the plaintiff, and, in the totality, had an aura of unfairness. No such showing was made in this case. Moreover, the finding in *Abrahamson* was overruled by the Illinois

Supreme Court when it held that the plaintiff was afforded due process and a fair hearing (*Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 606 N.E.2d 1111). In *Ciechon v. City of Chicago* (7th Cir. 1982), 686 F.2d 511, another case cited by the plaintiff, the court held that the plaintiff had been denied due process due to significant procedural irregularities and the existence of a "kangaroo court." 686 F.2d at 522.

Plaintiff's argument also must fail because he did not show a dual role of prosecution and adjudication. In the record before the court, there is no support for the contention that the Department's representatives who prosecuted the disciplinary charges were also the individuals who ruled on the plaintiff's subpoena requests. To the contrary, the record shows that the individual appointed by the Department Director to act as hearing officer during the adjudicative hearing was the same individual appointed by the Director to rule on the plaintiff's subpoena request. However, other individuals undertook the prosecutorial role on behalf of the Department, presented proof of the disciplinary charges and argued against issuance of the subpoenas. Thus, distinct individuals performed the adjudicatory and prosecutorial roles.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

MURRAY, P.J., and McNULTY, J., concur.